132 N.J. Super. 358 (1975)
333 A.2d 577
JAMES M. ELLAM, PLAINTIFF,
v.
ANN L. ELLAM, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 10, 1975.
*360 Mr. William Dodd for plaintiff.
Mr. Monroe Ackerman for defendant.
McKENZIE, J.C.C., Temporarily Assigned.
Plaintiff instituted suit March 1, 1974, seeking a divorce on the grounds of separation. Defendant's amended counterclaim for divorce charges plaintiff with desertion.
The parties, who are childless, purchased a house in Elizabeth and commenced moving into their home in June 1972. They were experiencing severe matrimonial difficulties at the time and, according to plaintiff, he moved to his mother's home in nearby Roselle on or about July 5 and did not thereafter live with defendant.
Although his testimony that the parties thereafter never had sexual relations was not challenged, on cross-examination *361 it developed that the parties nevertheless maintained many aspects of their relationship until May 1973.
On weekday mornings plaintiff's mother would drive him in her car from her home to the corner of his street in Elizabeth. He would walk to his house, let himself in, pet his dog, occasionally kiss his wife "good morning" and, as he put it, "make sure everything was O.K." He would then leave the house, take his car out of the garage and proceed to work. When he finished work, or the night classes he was attending, he returned to the matrimonial home. He would play with his dog, converse with defendant and, after she retired, watched television until approximately 12:30 A.M. At that time his mother would arrive to pick him up in her car and take him to her house to sleep, leaving his car in the garage at the marital home. Plaintiff would spend weekends at the marital home doing housecleaning, cutting the lawn, and performing similar household chores. He occasionally ate his meals there, bringing the food with him. On other occasions the parties ate together at plaintiff's mother's home. During this period of time the parties as a couple continued to accept social engagements and once she accompanied him out-of-state to attend a convention lasting several days. They shared a hotel room, but still did not engage in sexual relations.
Plaintiff, in explaining his continued presence in the matrimonial home, stated that he loved his wife, loved his dog even more, felt obliged to maintain the premises, and, as he stressed, did not want the neighbors to know that he and defendant had separated.
The question presented is whether the foregoing constitutes living "separate and apart in different habitations" within the meaning of N.J.S.A. 2A:34-2(d).
In DeRienzo v. DeRienzo, 119 N.J. Super. 192 (Ch. Div. 1972), it was held that the words "in different habitations" precluded the granting of a divorce where the parties occupied the same house, although plaintiff slept alone in a locked bedroom for which only he had the key. This language *362 in our statute was the basis for the court distinguishing the holding in that case from cases holding to the contrary in jurisdictions which also recognize separation as grounds for divorce. Thus in Delaware, where the statute requires that the parties live "separate and apart without any cohabitation" (13 Del. C. § 1522 (11)), it was held that a divorce could be granted where the parties occupied the same residence, there being no provision in that statute mandating separate dwellings. Heckman v. Heckman, 245 A.2d 550 (Del. Sup. Ct. 1968). A similar holding was reached under the District of Columbia statute which stated the grounds to be a "voluntary separation from bed and board for five consecutive years without cohabitation" (D.C. Code (1940) § 16-403, 49 Stat. 539.) Hawkins v. Hawkins, 89 U.S. App. D.C. 147, 191 F.2d 344 (D.C. App. 1951). In those jurisdictions the test is not separate roofs, but separate lives. See Hurd v. Hurd, 86 U.S. App. D.C. 62, 179 F.2d 68 (D.C. Cir.1949). Since every word and clause of our statute should be given effect, and a construction which renders any part superfluous must be avoided, Hoffman v. Hock, 8 N.J. 397 (1952), our statute clearly requires both. That is, the parties must occupy "different habitations" and must live "separate and apart."
Here plaintiff arguably resided with his mother, since he slept, took some meals and kept his clothes, all at her home. But with the additional exception of sexual intercourse, the parties continued their relationship substantially the same as prior to his moving. When he was not working or attending classes, basically all of plaintiff's waking hours were spent with defendant. His plea that their social intercourse was strained and rife with arguments goes to the quality of their association, not its substance. Generally speaking, the policy of our present divorce law is to terminate dead marriages. Brittner v. Brittner, 124 N.J. Super. 259 (Ch. Div. 1973). But the Legislature, following the recommendation of the Divorce Law Study Commission in requiring objective proof of the lack of viability in the relationship, has laid down specific *363 criteria in determining what marriages are eligible for dissolution. See Final Report of the Divorce Law Study Commission 73 (1970). Thus, if the parties were not in fact living separate and apart as required by the statute, a mere finding that their relationship was bereft of positive qualities is insufficient.
In other jurisdictions, where the parties have continued some degree of relationship after they have ceased sexual cohabitation, divorces have been granted on grounds of separation, provided that it is nevertheless manifest to the community that the parties are in fact living separate lives and are not attempting to induce others to regard them as living together. Young v. Young, 225 N.C. 340; 34 S.E.2d 154 (Sup. Ct. 1945); Christiansen v. Christiansen, 68 R.I. 438, 28 A.2d 745 (Sup. Ct. 1942); Hava v. Chavigny, 147 La. 330, 84 So. 892 (Sup. Ct. 1920); Brimson v. Brimson, 227 Ark. 1045, 304 S.W.2d 935 (Sup. Ct. 1957). Compare Adams v. Adams, 89 Idaho 84, 403 P.2d 593 (Sup. Ct. 1965). See Annotation, 35 A.L.R.3d 1238.
It has been said that what the law makes a ground for divorce is the living separately and apart of the husband and wife continuously for a certain number of years. This separation implies something more than a discontinuance of sexual relations whether the discontinuance is occasioned by the refusal of the wife to continue them or not. It implies the living apart for such period in such a manner that those in neighborhood may see that the husband and wife are not living together. [17 Am. Jur., § 162 at 232, cited in Dudley v. Dudley, 225 N.C. 83, 33 S.E.2d 489 (Sup. Ct. 1945); emphasis supplied]
Where, as here, it is apparent that the associations and dealings of the parties with each other after the alleged separation continue to include a substantial number of the many elements and ties which go into and make up the marital relationship and bind the parties together, it cannot be said they are living "separate and apart" within the meaning of our divorce statute.
*364 The court therefore holds that although plaintiff and defendant may have been residing in different habitations for more than 18 months, they were not living separate and apart.
A motion to dismiss the complaint at the conclusion of plaintiff's proofs is granted.